IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY McROBERTS,

    **Plaintiff,**

v.                                        CASE NO. 21-3141-SAC

HOPE FIKES, et al.,

    **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights complaint under 42 U.S.C. § 1983. Plaintiff is in custody at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed *in forma pauperis*. On July 13, 2021, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 11) ("MOSC") granting Plaintiff an opportunity to file an amended complaint to cure the deficiencies set forth in the MOSC. Plaintiff filed an Amended Complaint (Doc. 13) and on November 19, 2021, the Court entered a second Memorandum and Order and Order to Show Cause (Doc. 21) ("MOSC II"), granting Plaintiff a second opportunity to file an amended complaint to cure the deficiencies set forth in the MOSC and MOSC II. This matter is before the Court for screening Plaintiff's Second Amended Complaint at Doc. 22 ("SAC"). The Court's screening standards are set forth in the MOSC.

### I.  Nature of the Matter Before the Court

Plaintiff alleged in his original Complaint that the mental healthcare at HCF is deficient and that the current healthcare provider refuses to transfer mental health patients who need help. Plaintiff alleged that HCF lacks adequate mental healthcare, questioned staff's credentials, and alleged that Defendant Fikes is not allowing inmates to be transferred to a proper facility that specializes in mentally ill inmates. In his request for relief, Plaintiff sought an emergency transfer

to the TRU unit at Lansing Correctional Facility or to the El Dorado Mental Health Facility to be under the care of adequate mental health staff. (Doc. 1, at 5.) Plaintiff also sought to have an investigator assess HCF. *Id*.

The Court held in the MOSC that Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment, and that Plaintiff failed to show that Defendant Fikes disregarded an excessive risk to his health or safety or that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. The Court found that Plaintiff's claims suggest, at most, negligence.

Regarding Plaintiff's claim that his cell was hot during the summer months, the Court held that Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." The Court found that Plaintiff failed to allege "deliberate indifference" by any defendant. The Court also found that Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility.

In his Amended Complaint, Plaintiff alleged that he is being refused mental healthcare and that keeping him in solitary confinement is mentally and physically dangerous to Plaintiff. Plaintiff alleged that since he was stabbed on February 26, 2019, he has been in administrative segregation and is being refused a transfer to another facility. The Court held that Plaintiff's Amended Complaint failed to cure the deficiencies set forth in the MOSC; that Plaintiff's allegations show a disagreement regarding his medical care and fail to show that Defendant Fikes was deliberately indifferent to his health or safety; that Plaintiff's claims suggest, at most,

negligence and are subject to dismissal; and that Plaintiff failed to show that he is entitled to injunctive relief.

Plaintiff continues to name Hope Fikes as a defendant in his SAC. Fikes is the Behavior Health Coordinator at HCF. Plaintiff continues to claim that Fikes refuses to transfer Plaintiff to a different facility, and that Plaintiff is being kept in administrative segregation since he was stabbed in 2019. Plaintiff acknowledges that he was placed in segregation after he was "almost stabbed to death." (Doc. 22, at 2.) He also alleges that he has remained there and has been threatened with civil commitment for exercising his right to access the courts.

Plaintiff alleges an Eighth Amendment violation, deliberate indifference, and conspiracy to interfere with civil rights. Plaintiff alleges that he requested to speak with psychiatrist Dr. Okiki and explained to him that he had been held in administrative segregation which was affecting his mental health. Plaintiff alleges that Dr. Okiki merely responded with "noted." *Id*. at 3.

Plaintiff also names Centurion as a defendant in his SAC, but does not mention Centurion in the body of his SAC. Plaintiff seeks injunctive relief as follows: "[t]o be assigned a special master to oversee the correction of illegal mishandling of mental health patients under KDOC care and investigator be assigned to bring merit to my claims and a P&A official be assigned to call in question Hope Fikes['] inability to help those that can't help themselves." *Id*. at 6.

## II.  DISCUSSION

Plaintiff continues to seek injunctive relief in the form of an investigation into his allegations. The Court set forth in the MOSC II why Plaintiff has failed to show that he is entitled to injunctive relief. The Court found that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.

Plaintiff does not set forth specific mental healthcare that he seeks, rather he seeks to be transferred to a different facility. Plaintiff acknowledges that he met with a psychiatrist. Plaintiff claims that remaining in administrative segregation is detrimental to his mental health, but acknowledges in his SAC that when he attends segregation review meetings he is encouraged to return to general population and he has to "explain why [he] can't go to population" and he requests to be transferred instead. (Doc. 22–1, at 12–13.) The Court found in the MOSC that Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility.

Plaintiff's SAC fails to cure the deficiencies set forth in the MOSC and MOSC II, and he has failed to show good cause why his claims should not be dismissed. *See Shriner v. Rohlings*, 286 F. App'x 564, 566 (10th Cir. 2008) (unpublished) (finding disagreement with treatment offered by medical staff is insufficient to establish an Eighth Amendment violation and that plaintiff's allegation that he was denied a transfer for the evaluation of his mental block did not demonstrate deliberate indifference to his sufficiently serious medical needs); *see also Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1307 (10th Cir. 2021) (finding that general use of punitive isolation to discipline prisoners who happen to be mentally ill does not violate clearly established law).

The Court's MOSC II provided that "[i]f Plaintiff does not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Amended Complaint and may be dismissed without further notice for failure to state a claim." Plaintiff's SAC fails to cure the deficiencies set forth in the MOSC and MOSC II and fails to state a claim for relief.

**IT IS THEREFORE ORDERED THAT** this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated January 7, 2022, in Topeka, Kansas.**

>    S/ Sam A. Crow
>    SAM A. CROW
>    SENIOR U. S. DISTRICT JUDGE